# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

CONTINENTAL CASUALTY CO.,

    Plaintiff,

v.

LAURENCE V. PARNOFF, LAURENCE V. PARNOFF, P.C., DARCY YUILLE,

    Defendants.

No. 3:17-cv-769 (MPS)

## RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff and counterclaim defendant Continental Casualty Co. ("Continental") issued a professional liability coverage policy to attorney defendant Laurence V. Parnoff ("Parnoff") and his law firm, defendant Laurence V. Parnoff, P.C. (the "Parnoff Firm" and collectively, the "Parnoff defendants"). Continental's suit seeks a declaration that the policy did not obligate it to defend Parnoff in a state court action brought by Parnoff's former client, defendant Darcy Yuille ("Yuille"), concerning Parnoff's legal fees (the "*Yuille* Action").[1] Both Yuille and the Parnoff defendants assert affirmative defenses to Continental's action, and the Parnoff defendants also brought counterclaims for breach of contract and breach of the duty of good faith and fair dealing for Continental's refusal to defend Parnoff. (ECF Nos. 22, 28; *see* ECF No. 28 at 9–13.) Continental now moves for judgment on the pleadings under Fed. R. Civ. P. 12(c), arguing that its policy does not cover the *Yuille* Action because that action does not seek any "Damages" under the policy, does not involve "legal services" as the policy defines them, and even if these two requirements were met, the policy's "claims-made-and-reported" and "prior knowledge" requirements have not been satisfied. (ECF No. 31 at 1–2.) Continental further argues that the

---

[1] *Darcy Yuille v. Laurence V. Parnoff*, Case No. CV13-6036602-S (Superior Court, Judicial District of Fairfield, CT).

Parnoff defendants' counterclaims for breach of contract and the implied covenant of good faith should also be decided in Continental's favor as a matter of law. (*Id.* at 2.) For the reasons discussed below, I GRANT Continental's motion for judgment on the pleadings.

## I.  Factual Background

### A.  The Policy

Continental issued to the Parnoff Firm a professional liability insurance policy for the period of September 3, 2012 to September 3, 2013 (the "Policy"). (ECF No. 1-1.)[2] The Policy provides in relevant part:

> The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the policy period by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable[.]

(ECF No. 1-1 at 13, § I.A.)[3] Under the Policy, Continental had "the right and the duty to defend in the **Insured's** name and on the **Insured's** behalf a **claim** covered by this Policy even if any of the allegations of the claim are groundless, false or fraudulent." (*Id.*) The Policy defines a "**claim**" in relevant part to mean "a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services arising out of an act or omission, including **personal injury**, in the rendering of or failure to render **legal services**." (*Id.* at 16, § III.) "**Legal services**" are defined in relevant part as:

> A. those services, including eleemosynary (pro bono) services, performed by an **Insured** for others as a lawyer, arbitrator, mediator, title agent or other neutral fact finder or as a notary public . . .

---

[2] The parties have stipulated that this exhibit to Continental's complaint is a true and correct copy of that policy, except for the Parnoff Firm's application. (ECF No. 25 at 4.)

[3] Bolded terms are bolded and defined in the Policy. For purposes of this decision, references to the "**Company**" means Continental and the "**Insured**" means Parnoff and the Parnoff Firm. (*See* ECF No. 1-1 at 2, 4, 16–17.)

B. those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity and any investment advice given in connection with such services;
[. . . .]

(*Id.* at 18, § III.) The Policy defines "**damages**" as "judgments, awards and settlements (including pre-judgment interest), provided any settlements negotiated with the assistance and approval of the **Company**." The Policy specifically excludes from "**damages**," however, the following:

A. legal fees, costs and expenses paid or incurred or charged by any **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;
[. . .]
C. punitive or exemplary amounts;

D. the multiplied portion of multiplied awards;

[and] E. injunctive or declaratory relief;
[. . . .]

(*Id.* at 17, § III.) Finally, the Policy also contains two relevant limitations on covered claims: (1) a 'claims-made-and-reported' deeming related claims to be made when the first claim was made and reported; and (2) a "Prior Knowledge Condition" limiting coverage for conduct of which the Parnoff defendants were aware when they first became covered. (*See id.* at 13, § I.A.3 ("Prior Knowledge Condition"); *id.* at 14, § II.D (claims made requirement).)

### B. The *Parnoff* and *Yuille* Actions

According to the complaint in the *Yuille* Action, Yuille retained Parnoff in December 1998 to represent her in a civil claim against her former employer. (ECF No. 1-2 at ¶ 3.)[4] Parnoff and Yuille's retainer agreement allegedly provided for a contingency fee equal to 40% of Yuille's recovery. (*Id.* ¶ 4.) Parnoff represented Yuille in an arbitration in which Yuille was awarded

---

[4] The parties have also stipulated that this exhibit to Continental's complaint is a true and correct copy of the complaint in the *Yuille* Action. (ECF No. 25 at 4.)

3

$1,096,032.93, and Parnoff subsequently claimed 40% of the award (or $438,413.17) as fees. (*Id.* at ¶¶ 5–6.) On November 16, 2004, Yuille and Parnoff agreed that Parnoff would pay himself $125,000, but leave the $313,413 disputed balance of his claimed fee in a trust account. (*See id.* at ¶¶ 7–10.) In March 2005, Parnoff sued Yuille in state court for breach of the retainer agreement (the "*Parnoff* Action"). (*See id.* at ¶¶ 10–12.)[5] On May 20, 2010, the jury awarded Parnoff $252,044.27, which represented the fee to which he would have been entitled pursuant to Connecticut's fee cap statute, taking into account the $125,000 Parnoff had already been paid. (*Id.* at ¶ 13.) The parties both appealed, but on July 26, 2010 (during the appeal period following the judgment), Parnoff transferred **all** $363,960.87 of the disputed fee funds previously held in trust into a joint account held with his wife. (*Id.* at ¶ 17.) Parnoff and his wife then allegedly used the funds to pay personal expenses. (*Id.*) On November 20, 2012, the Connecticut Appellate Court reversed the judgment in the *Parnoff* Action, holding that Parnoff was not entitled to recover *any* fee. (*Id.* at ¶¶ 22–23.) The Connecticut Supreme Court subsequently declined review. (*Id.*)

On July 1, 2013, Yuille brought the lawsuit at issue here against Parnoff and his wife, Barbara Parnoff. (*Id.* at 1.) The complaint in the *Yuille* Action asserted seven counts, three against both Parnoff and his wife: (1) conversion, (2) constructive trust, and (3) disgorgement; and four against Parnoff only: (4) civil theft, (5) breach of fiduciary duty, (6) negligence, and (7) punitive damages. (*See generally id.*) The complaint sought money damages for the "depriv[ation] of funds to which [Yuille] was and is fully entitled" on the conversion, breach of fiduciary duty, and negligence counts (*id.* at 7, ¶ 26; *id.* at 9, ¶ 27; *id.* at 10, ¶ 27), treble damages for the civil

---

[5] *Parnoff v. Yuille*, No. CV 05-4006769 (Superior Ct., Judicial District of Fairfield, CT). The *Parnoff* Action was later consolidated with another related suit, *Parnoff v. Mooney*, Case No. CV-04-4001683-S (Superior Ct., Judicial District of Fairfield, CT), the details of which are not relevant for purposes of this decision.

conversion count (*id.* at 7-8, 13), interest (ECF no. 1-2 at 13), imposition of a constructive trust (*id.* at 9, ¶ 27), "disgorgement of all monies improperly taken as a purported legal fee" (*id.* at 13), punitive damages (*id.* at 11, 13), costs, and other equitable relief. (*Id.* at 13.)

Ten days after it was filed, on July 11, 2013, Parnoff tendered the *Yuille* action to Continental for coverage under the Policy. (ECF No. 25 at 5.) By letter dated July 22, 2013, Continental denied coverage. (*Id.*)

On February 17, 2017, the jury in the *Yuille* Action returned a verdict against Parnoff on the conversion and civil theft counts. (ECF No. 1-4.) The court entered judgment against Parnoff in the amount of $1,480,336.37, consisting of $363,960.87 in damages for conversion, $1,091,882.61 in treble damages for civil theft; and $24,492.89 in prejudgment interest. (*See* ECF No. 1-5.)

### C. This Action

Continental brought this action for declaratory judgment against Yuille and the Parnoff defendants on May 10, 2017, seeking a declaration that it owed no defense or indemnity coverage to Parnoff for the *Yuille* Action under the Policy. (ECF No. 1.) Both Yuille and the Parnoff defendants asserted affirmative defenses to the complaint. (*See* ECF No. 22 at 7, ECF No. 28 at 8–9.) The Parnoff defendants also brought counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF No. 28 at 9–13.) Specifically, the Parnoff defendants sought compensatory damages for Continental's refusal to defend Parnoff, which they allege caused the $1,480,336.37 judgment against Parnoff in the *Yuille* action, as well as emotional, physical, and reputational harm. (ECF No. 28 at 10, ¶¶ 6–8; *id.* at 11, ¶ 12; *id.* at 12, ¶¶ 6–8; *id.* at 13, ¶ 12.) Continental moved for judgment on the pleadings on October 19, 2017. (ECF No. 31.)

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). District courts "employ the same standard applicable to Rule 12(b)(6) motions to dismiss" in deciding a motion for judgment on the pleadings. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). The court "must accept all factual allegations in the [non-moving] party's pleading as true and draw all inferences in the non-moving party's favor." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). A party is entitled to judgment on the pleadings "only if it has established that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks and citation omitted). "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation omitted).

Under Connecticut law, "the question of whether an insurer has a duty to defend its insured is purely a question of law." *Lancia v. State Nat. Ins. Co.*, 134 Conn. App. 682, 689 (2012) (citation omitted). "[T]he insurer's duty to defend is measured by the allegations of the complaint." *Id.* "If an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." *Id.* "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract." *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 311 Conn. 29, 37 (2014) (citations omitted). "In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. *Id.* "As

6

with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *Id.*

### III.     Discussion

For the reasons set forth below, I conclude that Continental is entitled to judgment on the pleadings because it has shown that the material facts are undisputed[6] and that it is entitled to judgment as a matter of law.

Continental argues that it has no duty to defend or indemnify the Parnoff defendants, both (1) because the *Yuille* Action does not seek any "damages" under the Policy, and (2) because the *Yuille* Action is not a claim "by reason of an act or omission in the performance of legal services" by Parnoff under the Policy, but rather involves business practices on his own behalf. (ECF No. 31-1 at 12.) Continental also argues that the Policy would not afford coverage in any event because the *Yuille* Action predated the Policy's claims-made-and-reported period and because Parnoff does not satisfy the Policy's Prior Knowledge Condition. (*Id.*) Because Continental asserts that it had no duty to defend or indemnify Parnoff under the Policy, it also moves for judgment on the Parnoff defendants' counterclaims for breach of contract and breach of the duty of good faith and fair dealing. (*Id.* at 32–34.) I agree with Continental that the *Yuille*

---

[6] Although Continental's motion does not address those undisputed facts in detail (*see* ECF No. 31 at 2, 10), the Court finds that Continental has met its burden on this prong because: (1) the parties have stipulated to the key undisputed facts and documents, and the key documents are attached to the complaint (ECF No. 25 at 4-5; ECF Nos. 1-1, 1-2); (2) Yuille's and the Parnoff defendants' answers do not deny the specific facts in Continental's complaint (ECF Nos. 22, 28); (3) and the Parnoff defendants' opposition to Continental's motion does not assert that any disputes of material fact exist (ECF No. 37). Although valid and well-pleaded affirmative defenses may preclude judgment on the pleadings, *see* 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.), no defendant has argued that any defenses or factual issues preclude judgment on the pleadings here and thus any argument based on the affirmative defenses is forfeited. *See Gen. Star Nat'l Ins. Co. v. Adams Valuation Corp.*, 69 F. Supp. 3d 742, 749 (N.D. Ill. 2014) (because defendant did not argue that affirmative defenses forestall judgment on the pleadings, "any such argument is forfeited").

7

Action does not seek "damages" within the meaning of the policy, and do not reach its other arguments.

As a threshold matter, Continental correctly states that the Policy unambiguously affords coverage only for those claims that *both* seek covered "damages" *and* are "by reason of an act or omission in the performance of legal services by the Insured." (*See* ECF No. 1-1 at 13, § I.A.) Thus, if the *Yuille* Action does not seek "damages" under the Policy, there is no coverage. The Parnoff defendants' entire response to Continental's argument concerning "damages" consists of a single sentence: "[t]he plaintiff claims that the money in question constituted a disputed fee, but the Yuille complaint itself, while it makes that allegation in some of its counts, makes a different allegation in Counts Three and Five where the issue is not presented as a fee dispute but as a breach of a fiduciary duty." (ECF No. 37 at 3.) This attempt to transform the relief sought in the *Yuille* Action into "damages" under the policy by focusing on the theory of relief, *i.e.*, breach of fiduciary duty, rather than the factual allegations, has been squarely rejected by other courts that have considered the issue. *See Cont'l Cas. Co. v. Donald T. Bertucci, Ltd.*, 399 Ill. App. 3d 775 (2010) ("Like the courts in *Tana* and *Brady*, we compare the language of the policy with the facts alleged in the complaint, rather than examine whether the client has pled any particular theory of relief such as the attorney's breach of a legal duty, violation of a statute, or disregard for an equitable duty." (citing *Tana v. Professionals Prototype I Insurance Co.*, 47 Cal.App.4th 1612 (1996) and *Continental Casualty Co. v. Brady*, 127 Idaho 830, 832 (1995)). Looking to the factual allegations made in the complaint itself, I find that the relief sought in the *Yuille* Action plainly falls outside the Policy's unambiguous definition of "damages."

The facts alleged in the complaint in the *Yuille* Action make clear that Ms. Yuille and the Parnoff defendants were fighting over legal fees. The complaint recounts that Ms. Yuille

8

retained Parnoff in a claim for damages against her employer; the retainer agreement granted Parnoff a contingent fee that violated Connecticut's fee cap statute; Ms. Yuille demanded that Parnoff return a portion of his claimed fee after she won an award against the employer; he placed the disputed portion in escrow while they litigated the matter in an earlier lawsuit; after the verdict in that case and during the appeal period, he diverted the disputed fee amount in escrow to a personal account and used the amount for personal purposes. Her claims in the *Yuille* Action arose from his "transferring the escrowed funds," *i.e.*, the "the disputed fee," to his personal account. (ECF No. 1-2 at 5–6.)

The specific types of relief sought in the *Yuille* Action likewise relate to legal fees, and each type falls within a specific carve-out in the definition of "damages" in the Policy. First, the *Yuille* Action seeks relief for the "depriv[ation] of funds to which [Yuille] was and is fully entitled" (*see, e.g.,* ECF No. 1-2 at 7, ¶¶ 26) and in the form of "disgorgement of all monies improperly taken as a purported legal fee" (*id.* at 11, 13). Both items show that the *Yuille* Action seeks restitution of the "disputed fee funds" referenced throughout the complaint that were held in escrow until July 26, 2010, when Parnoff subsequently allegedly misappropriated them. (ECF No. 1-2 at 5, ¶¶ 15–17 (referencing "disputed fee" and "disputed fee funds"); *id.* at 7, ¶ 23 ("Yuille is entitled to the full amount of funds Parnoff held in escrow until July 26, 2010").) Accordingly, these damages are "legal fees . . . charged by [Parnoff] . . . *claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise*." (ECF No. 1-1 at 17, § III (emphasis added).) Second, the *Yuille* Action seeks treble damages (ECF No. 1-2 at 13), which are expressly exempted as "the multiplied portion of multiplied awards." (ECF No. 1-1 at 17, § III.) *See Carolina Cas. Ins. Co. v. Merge Healthcare Sols. Inc.*, 728 F.3d 615, 617 (7th Cir. 2013) (observing that the "context of the phrase 'multiplied portion of multiplied damages' tells

9

us that treble damages and the like are the target"). Third, the *Yuille* Action's punitive damages demand (ECF No. 1-2 at 11, 13) is also expressly excluded by the Policy. (ECF No. 1-1 at 17, § III (excluding "punitive or exemplary amounts").) Fourth, the *Yuille* Action's demand for imposition of a constructive trust is simply a mechanism for ensuring restitution of the disputed fee funds. (ECF No. 1-2 at 7, ¶ 27 (alleging for constructive trust count that the Parnoff defendants "wrongfully appropriated escrowed monies rightfully belonging to the plaintiff and have an equitable duty to return said monies to [Yuille]").) *See Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 433, 466 (2009) ("[A] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."). Fifth and finally, Yuille's demands for interest and costs (ECF No. 1-2 at 13) are contingent on her recovery of the disputed fee amount, and so these are excluded as "injuries that are a consequence of" the recovery of the disputed legal fees. (ECF No. 1-1 at 17, § III.)[7]

Other courts assessing the scope of covered "damages" in the fee-dispute context have reached similar results. In both *Bertucci*, 399 Ill. App. 3d 775, and *Clermont v. Cont'l Cas. Co.*, 778 F. Supp. 2d 133 (D. Mass. 2011), the courts looked to the substance of the underlying action and determined that those actions did not seek "damages" because they were in essence fee

---

[7] The same point disposes of the specific allegations in the complaint that Parnoff "failed to hold the funds that were subject of a fee dispute in a trust account where it would earn interest," (ECF No. 1-2 at 8, ¶ 26(d), 10, ¶ 26(d)), because the complaint alleges that any lost interest Yuille suffered occurred as a direct consequence of Parnoff's improper misappropriation of disputed fees, *i.e.*, the lost interest is an "injury[y] that [is] a consequence" of Parnoff's "charg[ing]" of "legal fees" within the meaning of the Policy. (*See* ECF No. 1-1 at 17; *see also* ECF No. 1-2 at 9, ¶ 27, 10, ¶ 27 (both alleging that as a result of Parnoff's breaches, Yuille was "deprived of [escrowed] funds to which she was and is fully entitled.").) *See Bertucci*, 399 Ill. App. 3d at 780–81 (finding no covered damages where underlying action alleged "only noncovered, direct and *consequential* injuries from the excessive legal fees [lawyer] charged . . . .") (emphasis added).

disputes, notwithstanding the inclusion of conversion and fiduciary duty claims. *See Bertucci*, 399 Ill. App. 3d 777–78, 780–81 (underlying action for excessive retention of attorney's fees from settlement proceeds); *see Clermont v. Cont'l Cas. Co.*, 778 F. Supp. 2d 133, 135–36 (D. Mass. 2011) (underlying fee dispute between lawyer and former firm over who was entitled to contingency legal fees). *Bertucci* also took a broad view of damages incurred as a "consequence" of the improperly retained fees, holding that the client's "statutory interest and her new attorney fees, as well as punitive damages" in bringing the underlying action were "noncovered, direct and consequential injuries from the excessive legal fees [the lawyer] charged against [the client's] assets." 399 Ill. App. 3d at 781. Similarly, in *Pias v. Cont'l Cas. Ins. Co.*, a district court granted an insurer's motion for judgment on the pleadings where the underlying action sought return of improperly charged attorney's fees, costs, and sanctions, noting specifically that "costs and attorney's fees as a result of filing the fee dispute motion" in the underlying action were injuries that were a "consequence" of the return of the disputed legal fees and, therefore, not covered. No. 2:13-CV-00182-PM-KK, 2013 WL 4012709, at *8 (W.D. La. Aug. 6, 2013). And finally, in *Cont'l Cas. Co. v. Feingerts & Kelly, APLC*, the Fifth Circuit affirmed Continental had no duty to defend "claims seek[ing] damages for legal fees" under a nearly identical definition of damages, but *did* have a duty to defend claims relating to the lawyer's factually distinct failure to apprise his client of settlement proceedings, because those damages were "not a consequence of legal fees charged by the [lawyer]." 132 F. App'x 14, 17–18 (5th Cir. 2005). Because the relief sought in the *Yuille* Action consists of either (a) restitution for disputed legal fees Parnoff misappropriated from the escrow account, (b) damages incurred as a direct consequence of Parnoff's alleged misappropriation, or (c) damages that are otherwise excluded from coverage under specific carve-outs, I likewise conclude that the *Yuille* Action

11

does not trigger coverage because it has not resulted in the Parnoff defendants' becoming "legally obligated to pay as **damages**" any amounts. (ECF No. 1-1 at 13.) Continental had therefore no duty to defend or indemnify Parnoff in the *Yuille* Action and is entitled to judgment as a matter of law.

Having reached this conclusion, I can easily resolve the Parnoff defendants' counterclaims. "The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014) (citation omitted). Because the Parnoff defendants allege that Continental's refusal to defend Parnoff in the *Yuille* Action constituted a breach of the Policy (ECF No. 28 at 11, ¶ 11), which I have already rejected, the breach of contract counterclaim fails as a matter of law. Further, claims for breaches of the implied covenant of good faith and fair dealing are "not actionable apart from a wrongful denial of a benefit under the policy." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 798 (2013). Because Continental did not breach the Policy, the Parnoff defendants' counterclaim for breach of the duty of good faith is also fails. Accordingly, Continental is entitled to judgment on the pleadings on both counterclaims.

## IV. Conclusion

For the reasons discussed above, I GRANT Continental's motion for judgment on the pleadings. The Clerk is directed to enter a judgment in favor of Continental declaring that Continental does not owe defense or indemnity coverage in connection with the *Yuille* Action because that matter did not seek any damages within the meaning of the Policy.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         September 12, 2018